IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

ALFREDO SANTOS GARCIA, §
 §
    Plaintiff, §
 §
v. § NO. EP-16-CV-145-MAT
 §
NANCY A. BERRYHILL,[1] §
ACTING COMMISSIONER OF THE §
SOCIAL SECURITY ADMINISTRATION, §
 §
    Defendant. §

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Alfredo Santos Garcia ("Garcia") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

### I.    PROCEDURAL HISTORY

Garcia was fifty-five years old at the time of his second hearing before the Administrative Law Judge ("ALJ"). (R. 37).[2] He had a commercial driver's license ("CDL") at the time of both

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this case.

[2] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

1

his hearings, and his job experience included working as a commercial truck driver, clerical worker, delivery driver, security guard, and parking lot attendant. (R. 44, 64, 65–66, 74). Garcia filed applications for DIB and SSI on February 18, 2011, in which he alleged disability beginning on November 1, 2010, due to hypertension, dyslexia, insomnia, hip problems, heel problems, and a left rotator cuff impairment. (R. 243–53, 283). After his applications were denied initially and upon reconsideration, Garcia requested a hearing. (R. 135–38, 141–43, 144–49).

On August 8, 2012, a hearing was conducted before the ALJ. (R. 57–81). The ALJ issued an initial written decision finding that Garcia was capable of performing work as a parking lot cashier and as a clerical worker. (R. 113–25). However, the Appeals Council remanded this matter to the ALJ on December 20, 2013, because an opinion for the state agency consultant was not included in the exhibits and did not appear to have been considered in the decision, and to allow the ALJ to have a more comprehensive discussion on the impact of Garcia's mental limitations on his residual functional capacity ("RFC"). (R. 40, 131–33). A second hearing was held on September 10, 2014. (R. 34–56). On December 9, 2014, the ALJ issued a written decision denying benefits on the ground that Garcia was capable of performing past relevant work as a clerical worker. (R. 12–27). On March 1, 2016, the Appeals Council denied Garcia's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1–4).

In his written decision, the ALJ found that Garcia had the following severe impairments: hypertension; right shoulder dislocation; obesity; back disorder; insomnia; hyperlipidemia; gastro esophageal reflux disease ("GERD"); chronic pain syndrome; anxiety/depression; and organic mental disorder. (R. 14). The ALJ determined that Garcia had the RFC to:

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, he can frequently climb ramps and stairs and occasionally climb ladders, ropes and scaffolds. He can frequently crawl, stoop, kneel, and crouch. He can frequently balance with the use of a hand held assistive device. He is limited to occasional overhead reaching with the left upper extremity. He should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards. Additionally, the claimant can understand, remember, and carryout simple instructions. He can make decisions, attend and concentrate for two hours at a time. He can interact adequately with coworkers and supervisors and responds appropriately to changes in the work setting.

(R. 18). Garcia argues that the ALJ's RFC finding is not supported by substantial evidence.

## II. DISCUSSION

### A. STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the Commissioner applied the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citations omitted). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation

3

omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.*

B. THE ALJ'S RFC FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Garcia argues that the ALJ's RFC finding is not supported by substantial evidence because it does not reflect all of the limitations relating to his impairments. (Pl.'s Br., ECF No. 20, at 3–4). Specifically, Garcia claims that he is unable to perform the requirements of light work and that his mental functional abilities are significantly more limited than accommodated by the ALJ. *Id.* at 4. In support of his physical and mental functional limitations, Garcia cites his testimony and reports, medical records, the third-party reports of Stephanie Martinez ("Martinez"), and the mental evaluation of Mark D. Beale, M.D. *Id.* at 4–5. Garcia also contends that the ALJ incorrectly assessed the weight given to the medical opinion of Dr. Beale. *Id.* at 6.

Through his numerous citations to the record without accompanying analysis, Garcia essentially asks the Court to reweigh the evidence.[3] However, the Court is prohibited from doing so. *Newton*, 209 F.3d at 452. The Court must only determine whether substantial evidence exists in the record as a whole to support the ALJ's decision. *Myers*, 238 F.3d at 619. Therefore, the Court only considers Garcia's specific challenges to the ALJ's decision.

Garcia contends that he has testified and reported that his ability to reach and lift is limited by pain in his left shoulder from rotator cuff surgery, that he "has right foot, knee, left hip, and neck problems," and that he has problems standing, walking, and lifting. (Pl.'s Br., ECF

---

[3] *See*, Pl.'s Br., ECF No. 20, at 5 ("The medical evidence in the record indicates obesity, schizo-affective disorder, anxiety, bipolar/depression, mood problems, memory problems, insomnia, chronic pain, bilateral shoulder pain, back pain, right heel and ankle pain, knee pain, and GERD. (Tr. 389, 392, 394, 397, 401, 404–08, 419, 421–23, 425--27, 454–57, 487–91, 517–18, 522, 526–27, 564–66, 568–70, 587).").

No. 20, at 4). The ALJ explicitly considered the inconsistencies of Garcia's statements made in his testimony, function reports, and application for a CDL and determined that Garcia lacked credibility. (R. 18–19). In coming to this conclusion, the ALJ stated that Garcia's claim of disability was "severely undermined" by the fact that he possessed a valid CDL, passed the medical exam, and reported hypertension as his only medical condition in his application for a CDL, dated April 9, 2014. (R. 19).[4]

Garcia also asserts that the evidence supports his use of a cane for ambulation and that such use would interfere with his ability to lift and carry. (Pl.'s Br., ECF No. 20, at 5). However, the ALJ found no evidence in the record of a prescription for a cane and noted that Garcia has worked many jobs since he started using a cane. (R. 24). Furthermore, in a May 14, 2011, consultative examination, Carlos Pastrana, M.D., described Garcia's gait as "good without cane, crutch, or assistive device." (R. 25, 456).

The ALJ also considered other medical examinations that support his finding that Garcia has the residual functional capacity to perform light work. An examination from November 19, 2013, shows normal strength and range of motion, and a December 5, 2013, report indicates he had normal reflexes, gait and stance, and musculoskeletal system. (R. 23, 528, 544). The ALJ concluded that, with some exception, Garcia "is most consistently noted throughout the treatment record to have full range of motion, normal strength, normal gait, with no neurological deficits." (R. 25).

Conflicts in evidence are for the Commissioner to resolve, *Spellman*, 1 F.3d at 360, and the Court finds substantial evidence exists to support the ALJ's finding of a RFC to perform light work with certain limitations.

---

[4] Garcia's signed Medical Examination Report in support of his CDL application also reflects that he denied having conditions such as impaired vision, digestive problems, nervous or psychiatric disorders, impaired hand, arm, foot, leg, finger, and toe, and chronic lower back pain. (R. 19, 579).

5

Garcia also contends that he testified and reported that he has difficulty finding words, experiences depression, and has problems with "social functioning, sleeping due to insomnia, difficulty with focus and concentration, lacking motivation/needing encouragement to do things, difficulty with personal care and feeling scared." (Pl.'s Br., ECF No. 20, at 4–5). Garcia references the third-party reports of Martinez in support of these limitations. *Id.* at 5.

As noted *supra*, finding that Garcia lacked credibility, the ALJ gave little weight to Garcia's subjective claims and the medical opinions that relied on Garcia's reporting. (R. 18–19, 25–26). Furthermore, the ALJ noted that Garcia had "sought no specialized mental health care," and that indications that Garcia could not afford specialized care were inconsistent with the fact that he sought specialized care for conditions for which he is not claiming disability. (R. 20, 22, 24). The ALJ also considered the third-party reports of Martinez. However, third-party statements:

> cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03P, 2006 WL 2329939, at *2. "Ultimately, SSR 06-03p requires only that the ALJ 'explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.'" *Smith v. Colvin*, No. 1:15-CV-173-JCG, 2016 WL 5396687, at *9 (S.D. Miss. Sept. 27, 2016) (citing SSR 06-03P, 2006 WL 2329939, at *6). The ALJ sufficiently addressed Martinez's statements, noting contradictions with Garcia's own statements, and considered them within the context of the record as a whole. (R. 25–26).

The ALJ gave significant weight to the "State agency medical and psychological consultants whom [sic], in combination, determined the claimant could understand, remember, and carry out simple instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with coworkers and supervisors and respond appropriately to changes in a work setting."[5] (R. 25, 86–97, 98–109, 435–38).

Finally, Garcia contends that the ALJ erred by giving little weight to Dr. Beale's opinion of Garcia's mental impairments after determining that they seemed to be based on Garcia's own reporting. (Pl.'s Br., ECF No. 20, at 6). Dr. Beale's evaluation describes several mental limitations and assigns Garcia a Global Assessment of Functioning ("GAF")[6] score of 30[7] down from 60. (R. 425–27). In deciding the weight to give a medical opinion, the ALJ may consider the evidence used to support the opinion and the consistency of the opinion with the record as a whole. 20 CFR §§ 404.1527(c)(3), (4), 416.927(c)(3), (4). As noted by the ALJ, much of Dr. Beale's assessments of Garcia's mental limitations appear to be based on Garcia's own reporting, (R. 26, 425–27), and Garcia does not identify any particular portion of the opinion that he claims is not based on his own reporting. (Pl.'s Br., ECF No. 20, at 6).

Moreover, the ALJ did include some limitations in the RFC that were contained in Dr. Beale's report and that were consistent with opinions in other medical records, such as the ability to understand, remember, and carryout only simple instructions. (R. 18, 86–97, 98–109, 427,

---

[5] The ALJ gave little weight to the opinion of these consultants regarding Garcia's social limitations because they were based in part on Garcia's own reporting, which the ALJ found to be unreliable. (R. 16, 25).

[6] "The GAF Scale assesses an individual's 'psychological, social, and occupational functioning on a hypothetical continuum of mental-health-illness." *Vaughn v. Colvin*, 589 F. App'x 238, 240, n.2 (5th Cir. 2014) (quoting AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. Text Revision 2000) (DSM-IV-TR)).

[7] The GAF Scale ranges from 0 to 100, with 100 indicating "superior functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. Text Revision 1994)). A GAF score of 30 indicates: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *Id.*

435–51). Further, the ALJ is under no obligation to give controlling weight to a GAF score. *See Jackson v. Colvin*, No. 4:14-CV-756-A, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015), *report and recommendation adopted*, No. 4:14-CV-756-A, 2015 WL 7582339 (N.D. Tex. Nov. 25, 2015) ("Instead of viewing GAF scores as absolute determiners of the ability to work, ALJs should make disability determinations on a case-by-case basis, considering the entire record") (collecting cases). Thus, the Court finds that the ALJ did not err in his treatment of Dr. Beale's evaluation. Accordingly, the Court finds that the ALJ's mental RFC finding is supported by substantial evidence.

### III. CONCLUSION

**IT IS ORDERED** that the decision of the Commissioner will be **AFFIRMED**.

**SIGNED** and **ENTERED** this __17th__ day of September, 2018.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE